IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| YVONNE SWAIN, individually, and on behalf of similarly situated others, § § § § § Plaintiff § § v. § § CHARTER COMMUNICATIONS, INC., § § Defendant § § | Case No. 1:18-CV-00499 |

**PLAINTIFF'S ORIGINAL COMPLAINT – COLLECTIVE ACTION**

Plaintiff Yvonne Swain ("Plaintiff"), individually, and on behalf of similarly situated others, by and through her attorneys, The Mullen Firm PLLC and Bryan Law Firm PLLC, hereby files this Original Complaint – Collective Action against Defendant Charter Communications, Inc. and would show the Court as follows:

### I.   INTRODUCTION

1. Charter Communications, Inc. ("Charter") is a domestic telecommunications company. Following its May 2016 purchase of Time Warner Cable ("TWC"), Charter established itself as one of the largest cable, television, and phone service providers in the United States. As a result, Charter currently serves over 25 million customers, and employs nearly 100,000 individuals nationally. Charter is the successor in interest to TWC, Plaintiff's employer. Charter and TWC are collectively referred to as "Defendant."

2. Plaintiff is a Black female and a former employee of Defendant. Despite Plaintiff's acknowledged good performance, Defendant continually refused to pay her wages equal to male

1

and/or non-Black employees in substantially equal employment roles. After multiple pleas to Defendant to address her obvious wage disparity went unaddressed, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in December 2014, asserting claims under the Equal Pay Act of 1963 ("EPA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff subsequently informed her supervisor, Barbara Estes ("Ms. Estes"), of the EEOC charge filing.

3. Immediately thereafter, Ms. Estes began retaliating against Plaintiff. Such unlawful retaliation included, but was not limited to (i) accusations of misuse of company resources (which accusations were revealed to be false after an internal investigation by Defendant); (ii) intentional obstruction of Plaintiff's ability to perform her work; and (iii) harassment aimed at negatively influencing Plaintiff's personal life. In addition to the severe mental anguish Plaintiff was forced to endure, Ms. Estes' retaliation made it impossible for Plaintiff to effectively carry out her employment duties. Ultimately, and as a result of the foregoing, Plaintiff was constructively discharged sometime in the fall of 2015.

4. After investigation, the EEOC subsequently concluded, as detailed in its Determination letter dated March 21, 2018, attached hereto as Ex. A, that Defendant failed to compensate Plaintiff comparably to men based on her gender. Based on the same pay disparity, the EEOC also determined that Defendant discriminated against Plaintiff because she is Black. Thus, the EEOC determined that Defendant discriminated against Plaintiff because of race and gender, in violation of Title VII and the EPA. Defendant was provided with a copy of the Determination, and invited to participate in conciliation of the charge, but, apparently, Defendant

chose not to respond to the EEOC's invitation.[1]  Likewise, Defendant chose not to respond to Plaintiff's pre-suit demand letter.

5.     Defendant has long been aware of the systematic, pervasive discriminatory practices prevalent within its organization, but has failed to take remedial measures to prevent or correct them. Indeed, even after it was notified of Plaintiff's claims by Plaintiff, and, secondarily, the EEOC, and although it knew of the obvious gender and race-based pay disparities, Defendant failed to correct such disparities.  Consequently, Defendant has intentionally violated the EPA and Title VII, extending the EPA's statute of limitations to three years, and subjecting Defendant to enhanced damages.

6.     Defendant has subjected Plaintiff and other similarly situated employees to: (i) unwarranted suppression of pay, professional development, and promotions; (ii) discriminatory career and development opportunities and promotion denials; (iii) discriminatory policies and procedures that have a disparate impact on female and Black employees generally; (iv) lower pay for work requiring substantially equal skill, effort, and responsibility; and (v) other adverse terms and conditions of employment.

7.      Defendant has failed to take adequate remedial measures to rectify this disparate impact and correct the widespread discrimination within its organization. Accordingly, to rectify Defendant's discriminatory practices and policies, Plaintiff, individually, and on behalf of similarly situated others, seeks all monetary, legal, and equitable relief available under the EPA and Title VII.

---

[1] The EEOC corresponded with Charter's in-house counsel throughout its investigation, thus, Charter was clearly on notice of Plaintiff's claims, and Charter had the opportunity to participate in the EEOC's investigation and conciliate such claims. *See, e.g.,* Ex. A.

## II.   PARTIES, JURISDICTION, AND VENUE

8.      Plaintiff is a citizen of the United States who resides within this District and Division and who was employed by Defendant from 2010 until 2015, when Defendant constructively discharged her.  Plaintiff's written consent to become a party plaintiff is attached hereto as Ex. B, and hereby filed on the day this action is commenced.

9.      Defendant is a Delaware corporation, engaged in an industry affecting commerce within the meaning of the FLSA, 29 U.S.C. § 201 *et seq.*  Defendant is a national telecommunications, internet, and cable company that has gross sales made or business done in excess of $500,000.00 annually.  At all times relevant and material herein, Defendant has employed more than fifteen employees, and thus, constitutes an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e, *et seq.*

10.     Defendant does business within this District at 12012 N. Mopac Expy., Austin, Texas 78758.  Defendant may be served by serving its Registered Agent, CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

11.     This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1); the Fair Labor Standards Act, 29 U.S.C. § 216(b) (the "FLSA"), of which the EPA is a part; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*; and further by reason of 28 U.S.C. § 1337 and 28 U.S.C. § 1343.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f) because Defendant conducts substantial business in this District and because unlawful employment practices originated in this District, wherein Plaintiff was employed by Defendant during the relevant time period.

13. Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites of Title VII by timely filing charges with the EEOC. Plaintiff received a Notice of Right-to-Sue from the EEOC shortly after April 18, 2018. The instant action was filed within ninety (90) days of receipt of the applicable Notice of Right-to-Sue.

### III.  FACTS

#### A.  PLAINTIFF'S EMPLOYMENT WITH DEFENDANT

14. Plaintiff was hired as a Retention Representative in August of 2010. Plaintiff was a valued employee, earning high performance ratings from 2010-2014. As detailed in the EEOC Determination dated March 21, 2018, Ex. A, which is hereby incorporated, Defendant has previously acknowledged Plaintiff's high value and performance ratings.

15. In about June 2012, Plaintiff was promoted to the position of Trainer II. From the inception of her promotion until her constructive discharge, Plaintiff was paid substantially less than male employees employed in the same Trainer II position, reporting to the same supervisor. Notably, Plaintiff is Black, but her then-supervisor and these male employees are not Black.

16. Plaintiff complained to her supervisor and Defendant's human resources about the pay disparities. After Defendant failed to rectify such pay disparities, in December 2014, Plaintiff filed her EEOC charge, and informed her supervisor, Ms. Estes, of such charge. In fall 2015, Defendant's retaliatory conduct caused Plaintiff to resign.

#### B.  DEFENDANT'S GENDER-BASED PAY DISCRIMINATION AGAINST PLAINTIFF

17. Defendant discriminated against Plaintiff on the basis of her gender in violation of the EPA and Title VII by paying her less than similarly situated male employees performing the same or similar duties.

18. Other male employees occupying Trainer II positions, with experience comparable to Plaintiff's, received much higher wages during the relevant time period. For example, according to the EEOC Determination, Brent Yonk ("Yonk") and Carlos Romo ("Romo") "performed identical job duties, with the substantially equal effort, skill, and responsibility, under the same working conditions and for the same decision maker, Ms. Estes. Further, all three employees were rated on the same performance standards in 2013-2014. *See* Ex. A.

19. Despite the significant similarities in their employment, both Yonk and Romo were paid considerably more than Plaintiff. In 2015, Plaintiff's annual compensation was set at $46,042.22, while her nearly identically situated male comparators received substantially more (Yonk received a salary of $49,813.00 and Romo was compensated $65,432.00). *Id.* These facts establish a prima facie case of pay and gender discrimination in violation of the EPA and Title VII.

### C. DEFENDANT'S RACE-BASED PAY DISCRIMINATION AGAINST PLAINTIFF

20. Defendant discriminated against Plaintiff on the basis of her race in violation of the Title VII by paying her less than similarly situated non-Black employees performing the same or similar duties.

21. Other non-Black employees occupying Trainer II positions, with experience comparable to Plaintiff's, received much higher wages during the relevant time period. For example, according to the EEOC Determination, Yonk and Romo "performed the same job duties, with substantially equal effort, skill, and responsibility, under the same working conditions and for the same decision maker [Ms. Estes]." Further, all three employees were rated on the same performance standards in 2013-2014.

22. Despite the significant similarities in their employment, both Yonk and Romo were paid considerably more than Plaintiff. In 2015, Plaintiff's annual compensation was set at

6

$46,042.22, while her nearly identically situated male comparators received substantially more (Yonk received a salary of $49,813.00 and Romo was compensated $65,432.00). Like Plaintiff's higher paid comparators, Ms. Estes in not Black. *See* Ex. A. These facts establish a prima facie case of race discrimination in violation of Title VII.

### D. RETALIATION AND CONSTRUCTIVE DISCHARGE

23. Plaintiff filed her EEOC charge in December 2014. Upon submitting the EEOC charge, Plaintiff notified Ms. Estes of the filing and reiterated her prior request for Defendant to review the fairness of her compensation and the compensation of others employed in the Trainer II position.

24. Almost immediately, and as a direct result of the filing of Plaintiff's EEOC charge, Ms. Estes began retaliating against Plaintiff with regard to the terms and conditions of her employment. Examples of Ms. Estes' retaliatory conduct against Plaintiff include, but are not limited to: (a) micromanaging Plaintiff's work without cause; (b) making a false allegation concerning Plaintiff's misuse of company resources (an allegation that was investigated and rejected by the company); (c) **purposely setting meetings after business hours, on days Ms. Estes knew Plaintiff had pre-planned Bible studies or other activities**; and (d) unnecessarily and disruptively evaluating Plaintiff while she was in the midst of conducting training.

25. Indeed, although she had always given Plaintiff significant professional latitude before her wage disparity complaint, following Plaintiff's protected activity, Ms. Estes began monitoring training conducted by Plaintiff and disrupting such training by passing her notes or making whispered comments. To Plaintiff's knowledge, employees with Plaintiff's experience and performance ratings who had not complained about unlawful pay disparities were not micromanaged and monitored by Ms. Estes. Plaintiff complained to Defendant's human resources

personnel about Ms. Estes' conduct, but, although the pay disparity was acknowledged, Defendant failed to remediate the pay disparity and failed to end the unlawful retaliation. Indeed, despite its knowledge of her EEOC charge and its allegations of retaliation, Defendant did nothing to investigate and rectify Plaintiff's concerns. As a result, Plaintiff felt she had no choice but to resign her employment with Defendant.

## IV. COLLECTIVE ACTION ALLEGATIONS UNDER THE EQUAL PAY ACT

26. Plaintiff re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

27. Plaintiff brings collective claims under the EPA pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all current and former female employees of Defendant and/or TWC, who, within the three years preceding this suit worked in a Trainer or equivalent role (the "EPA Class"), and who are, thus, similarly situated to Plaintiff. Upon information and belief, Plaintiff was subject to the same compensation methodology, performance rating scheme, and promotion standards as others in the EPA Class, which, in Plaintiff's case (and she believes the cases of others similarly situated), led to the significant pay disparities between male Trainers and Plaintiff, as set forth above.

28. Plaintiff understands from discussions with other female co-workers that they, too, were paid less than their male comparators.

29. Questions of law and fact common to the EPA Class include, but are not limited to, the following:

>  (a) Whether Defendant unlawfully failed and continues to fail to compensate female employees at a level commensurate with similarly situated male employees;

(b) Whether Defendant unlawfully assigned and continues to assign female employees into positions graded at a lower pay and compensation scale to similarly qualified males;

(c) Whether Defendant's policy and practice of failing to compensate female employees on a par with comparable male employees as a result of (a) and (b) violates the EPA; and

(d) Whether Defendant's failure to compensate female employees on a par with comparable male employees as a result of (a) and (b) was willful within the meaning of the EPA.

30. Violations of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA Class because the claims of Plaintiff are similar to the claims of the EPA Class.

31. Plaintiff and the EPA Class (a) are similarly situated; (b) have substantially similar job classifications, functions, titles, and/or duties; and (c) are subject to Defendant's common policy and practice of gender discrimination in failing to compensate female Trainers commensurate with compensation given to male Trainers who perform substantially equal work.

## V.  LEGAL CLAIMS

### COUNT I

**VIOLATION OF THE EPA**
**29 U.S.C. §§ 206,** *et seq***.**
**(On Behalf of Plaintiff and the EPA Class)**

32. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

33. This Count is brought on behalf of Plaintiff and all members of the EPA Class.

34. Defendant has discriminated against Plaintiff and similarly-situated female employees in violation of the FLSA, as amended by the EPA, by subjecting them to unequal pay on the basis of sex.

35. Defendant has discriminated against Plaintiff and similarly-situated female employees by treating them differently from and less preferably than similarly-situated male employees who performed jobs requiring equal skill, effort, and responsibility, and which were performed under similar working conditions.

36. Defendant caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the EPA. Further, Defendant knew of or showed reckless disregard for the fact that its conduct was in violation of the EPA, as demonstrated by the fact that, even following its receipt of Plaintiff's EEOC charge, Defendant refused to raise Plaintiff's pay to that of her similarly situated male counterparts.

37. As a result of Defendant's conduct alleged herein and/or Defendant's willful, knowing and intentional discrimination, Plaintiff and similarly-situated female employees have suffered and will continue to suffer harm, including but not limited to, lost wages, lost benefits, and other financial loss.

38. Plaintiff and similarly-situated female employees should be awarded all legal and equitable remedies, including underpaid wages, doubled compensatory awards for all willful violations, and reasonable attorney fees and costs under 29 U.S.C. § 216, *et seq*.

## COUNT II

### VIOLATION OF TITLE VII
### 42 U.S.C. § 2000e, *et seq*.
### (Plaintiff Only)

39. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

40. This Count is brought on behalf of Plaintiff, individually.

41. Defendant discriminated against Plaintiff in violation of Title VII by subjecting her to unequal pay on the basis of sex and/or race.

42. Defendant discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated non-Black and/or male employees who performed jobs requiring equal skill, effort, and responsibility, and which were performed under similar working conditions.

43. Defendant caused, attempted to cause, contributed to, or caused the continuation of, the discrimination based on sex and/or race in violation of Title VII. Further, Defendant knew of or showed reckless disregard for the fact that its conduct was in violation of Title VII, as demonstrated by the fact that, even following its receipt of Plaintiff's EEOC charge, Defendant refused to raise Plaintiff's pay to that of her similarly situated male and/or non-Black counterparts.

44. As a result of Defendant's conduct alleged herein and/or Defendant's willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer harm, including but not limited to, lost wages, lost benefits, and mental anguish and emotional distress.

45. Plaintiff should be awarded all legal and equitable remedies, including underpaid wages, damages for mental anguish and emotional distress, punitive damages, and reasonable attorney fees and costs.

## COUNT III

### TITLE VII RETALIATION
### 42 U.S.C. § 2000e, *et seq.*
### (Plaintiff Only)

46. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

47. Plaintiff alleges that she suffered retaliation and harm, including loss of employment with Defendant, because of her protected activity, in violation of 42 U.S.C. § 2000e-3(a).

48. As a result of Defendant's retaliation, during her employment, Plaintiff suffered mental anguish and emotional distress, and, since her constructive discharge, she has suffered and continues to suffer harm, including but not limited to lost wages and benefits, diminished employment opportunities, and humiliation, embarrassment, emotional and physical distress, and mental anguish.

49. By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available for violations of the anti-retaliation provision of Title VII, including an award of punitive damages.

50. Plaintiff seeks reinstatement to her Trainer II position (or its equivalent), with commensurate pay, raises, benefits, and seniority rights.

51. Plaintiff should be awarded attorney fees and costs under Title VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually respectfully requests the following relief:

1. A declaration that Defendant's actions, policies, and practices as alleged herein are unlawful;

2. Reinstatement;

3. Lost wages and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

4. Compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

5. Punitive damages in an amount to be determined at trial;

6. Liquidated damages under the EPA;

7. Interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

8. An order enjoining Defendants from engaging in the unlawful acts complained of herein;

9. Reasonable attorney fees and costs of suit; and

10. For such other and further relief as this Court deems just and proper.

FURTHER, Plaintiff, individually and on behalf of a class of similarly situated and aggrieved employees, respectfully requests that the Court award the following relief:

1. Designation of this action as a collective action on behalf of the proposed EPA Class and:

    (a) prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the EPA Class, which (a) apprises them of the pendency of this action and (b) permits them to assert timely EPA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b); and

    (b) tolling the statute of limitations on the claims of all members of the EPA Class from the date the original complaint was filed until the class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as plaintiffs;

2. Declare and adjudge that the Defendant's employment policies, practices and/or procedures challenged herein are illegal and in violation of the rights of the EPA Class;

3. Issue a permanent injunction against the Defendant and any and all persons acting in concert with Defendant from engaging in any conduct violating the rights of Plaintiff and those similarly situated, and order such injunctive relief as will prevent Defendant from continuing its discriminatory practices and protect others similarly situated;

4. Order Defendant to initiate and implement programs that will: (i) provide equal employment opportunities for female employees; (ii) remedy the effects of the Defendant's past and present unlawful employment policies, practices and/or procedures; and (iii) eliminate the continuing effects of the discriminatory practices described above;

5. Order Defendant to adjust the wage rates and benefits for Plaintiff and others similarly situated to the level that they would be enjoying but for the Defendant's discriminatory policies, practices, and procedures;

6. Order Defendant to place or restore Plaintiff and others similarly situated into those jobs they would now be occupying but for Defendant's discriminatory policies, practices, and procedures;

7. Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Plaintiff and others similarly situated;

8. Award back pay, front pay, lost benefits, liquidated damages, preferential rights to jobs and other damages for lost compensation and job benefits with pre-judgment and post-judgment interest suffered by Plaintiff and others similarly situated to be determined at trial;

9. Order Defendant to make whole Plaintiff and others similarly situated by providing them with appropriate lost earnings and benefits, reinstatement opportunities, and other affirmative relief;

10. Award any other appropriate equitable relief to the Plaintiff and others similarly situated as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues triable of right by jury.

Respectfully submitted,

*/s/ Kevin S. Mullen*
**Kevin S. Mullen**
Texas Bar No. 24032892

THE MULLEN FIRM PLLC
3801 N. Capital of Texas Hwy.
Suite E-240/604
Austin, TX 78746
512.537.7959 (Telephone)
kevin@themullenfirm.com

-and-

/s/ Craig M. Bryan
**Craig M. Bryan**
Texas Bar No. 24092186

BRYAN LAW FIRM PLLC
3801 N. Capital of Texas Hwy.
Suite E-240/212
Austin, Texas 78746
O: (512) 777-1769
F: (512) 290-9177
cbryan@bryanfirm.com

**ATTORNEYS FOR PLAINTIFF**